# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KRISHNA PRASAD ADHIKARI, BIPLAV BHATTA, LUKENDRA GURUNG, SANJIV GURUNG, and SURAJ LAMICHHANE<br><br>Plaintiffs,<br><br>v.<br><br>HALLIBURTON COMPANY and HALLIBURTON ENERGY SERVICES, INC.<br><br>Defendants. | Case: 1:20-mc-00029<br>Assigned To : Kollar-Kotelly, Colleen<br>Assign. Date : 5/6/2020<br>Description: Misc. |

## MOTION TO ENFORCE SUBPOENA AND COMPEL PRODUCTION, AND INCORPORATED MEMORANDUM OF LAW

On April 1, 2020, Movants Krishna Prasad Adhikari, Biplav Bhatta, Lukendra Gurung, Sanjiv Gurung, and Suraj Lamichhane served Halliburton Company and Halliburton Energy Services, Inc. (collectively, "Halliburton") with subpoenas duces tecum issued out of the Southern District of Texas in connection with human-trafficking litigation pending in that court. Ex. 1, Subpoena to Halliburton Company; Ex. 2, Subpoena to Halliburton Energy Services, Inc.; Ex. 3, Plaintiffs' Request for Production to Halliburton and HESI; Ex. 4, Affidavit of Service. Halliburton is the former parent company of KBR, Inc., and its affiliates, Defendants in the underlying litigation.

Responses were due on April 29, 2020, at the Washington, D.C., office of Cohen Milstein Sellers & Toll PLLC, Movants' counsel. Halliburton has not responded, objected, or otherwise contacted Movants' counsel. Movants hereby request the Court enforce the subpoenas and order production of the requested documents.

RECEIVED Mail Room MAY - 6 2020 Angela D. Caesar, Clerk of Court U.S. District Court, District of Columbia

Movants seek the production of documents that are key to their claims against the KBR Defendants—including investigative files, government-relations files, and press-office files. These documents are relevant to corporate knowledge and to showing that KBR entities provided "substantial assistance" that enabled the human trafficking to continue. Indeed, many of the documents sought have been specifically identified by the trial court as necessary to Plaintiffs' claims in its opinions. Defendants informed Movants that the relevant documents remained housed at Halliburton after the corporate split and told Movants that Halliburton would not provide the documents voluntarily.

## I. BACKGROUND

### A. The Underlying Human-Trafficking Litigation

Movants are Plaintiffs in a civil action alleging human trafficking, forced labor, negligence, and other claims against KBR, Inc., and six of its subsidiaries. The case is currently pending in the Southern District of Texas. During the events that gave rise to the underlying litigation, KBR was a subsidiary of Halliburton Company.[1]

Movants are five men who were lured from Nepal with false promises of good retail and hospitality jobs in Jordan; instead, they were trafficked to provide menial labor for KBR at U.S. military bases in Iraq. Complaint at ¶¶ 54–87, *Krishna Prasad Adhikari v. KBR Inc.*, No. 4:16-cv-2478 (S.D. Tex. Sept. 28, 2015), Dkt. 1. Movants alleged that to fulfill its logistical-support contract with the United States, LOGCAP III, KBR had to recruit thousands of laborers to pick up trash, serve meals, clean, and perform other menial but necessary tasks. *Id.* ¶ 17. Once the recruited workers arrived at the U.S. military bases, they worked under the complete direction,

---

[1] Halliburton Energy Services, Inc., is presently a subsidiary of Halliburton Company and apparently also maintains some of the relevant documents.

management, and control of KBR. *Id.* ¶ 92. The United States paid KBR billions of U.S. taxpayer dollars for these services. *Id.* ¶ 18.

KBR retained Daoud & Partners, a labor broker, to provide a steady stream of foreign workers. *Id.* ¶¶ 31, 119–26. KBR exercised tight control over the recruitment and supply of laborers, including through the close supervision of Daoud by managers in the United States. *Id.* ¶¶ 154–174.

Well before Movants were trafficked, KBR managers in the United States knew that KBR was obtaining laborers who had been promised jobs elsewhere and transported against their will; were paid lower wages than promised; had their passports confiscated; and were subjected to other coercive practices. *Id.* ¶¶ 95–138. KBR received reports of human trafficking, including reports specifically concerning Daoud, from the media, diplomats, the U.S. military, from KBR's own employees and subcontractors, and from the laborers themselves. *Id.* ¶¶ 98–118. These reports were received and managed by KBR executives and managers in the United States. *Id.* ¶¶ 24, 99, 102-03, 172, 186-87. In response to these reports, KBR managers in the United States threatened to fire and did fire workers who reported abuses, and they worked to cut short any inquiries. *Id.* ¶¶ 130–36. Despite the history of abuses and the stream of evidence demonstrating that its labor brokers were providing trafficked labor, KBR executives in the United States purposefully continued to use these brokers and to rely on the trafficking labor. *Id.* ¶¶ 114-118, 123, 157. In addition, U.S.-based KBR managers prohibited KBR's other employees or contractors from offering advice to workers complaining of abuse. *Id.* ¶132.

The district court denied KBR's motion to dismiss, permitting Movants' Alien Tort Statute, Iraq law, and common-law negligence, negligent hiring, negligent supervision, and false-imprisonment claims to go forward. *See Krishna Prasad Adhikari v. KBR Inc. (Krishna Prasad*

*Adhikari I)*, No. 4:16-cv-2478, 2017 WL 4237923 (S.D. Tex. Sept. 25, 2017). The trial court recently stayed KBR's motion for summary judgment in part to allow Movants to pursue this production, which KBR had previously failed to provide. *See Krishna Prasad Adhikari v. KBR Inc. (Krishna Prasad Adhikari II)*, No. 4:16-cv-2478, 2020 WL 588933 (S.D. Tex. Feb. 6, 2020).

Movants previously served KBR with a request for production seeking, inter alia, documents relating to media inquiries, investigations, and communications with the United States government concerning trafficking in KBR's LOGCAP III workforce. Ex. 5, Plaintiffs First Request for Production to the KBR Defendants. KBR did not object to these requests on relevancy grounds. Nevertheless, KBR largely failed to produce the documents Movants requested, leading the trial court to stay summary judgment so Movants could further pursue this discovery.

In recent discussions with KBR, KBR informed Movants that Halliburton retained many of the documents Movants are looking for after the 2007 corporate split between KBR and Halliburton. Movants requested KBR to seek these documents from Halliburton. After reaching out to Halliburton, KBR informed Movants that it did "not anticipate receiving any voluntary assistance from Halliburton." Ex. 6, Email from R. Hess to A. Fryszman et al. (Apr. 2, 2020).

### B. The Documents Sought are Relevant to Plaintiffs' Claims

In denying KBR's motion to dismiss, the trial court expressly found that "Plaintiffs allege that, for several years, KBR personnel in the United States supervised and supported Daoud & Partners' operations in Iraq and coordinated KBR's responses to trafficking allegations. As such, the alleged human trafficking and forced labor probably would not have occurred in the same way or to the same extent without KBR's actions. Plaintiffs' allegations therefore establish substantial assistance." *Krishna Prasad Adhikari I*, 2017 WL 4237923, at *6 (citation omitted).

Movants therefore sought discovery of KBR's coordination and responses to trafficking allegations, including by press office, government-affairs office, and by internal investigators. And in its now-stayed motion for summary judgment, KBR argued Movants' claims should be dismissed specifically because it said the evidence of KBR's coordination and responses to trafficking allegations that Movants were able to gather from KBR's production did not sufficiently show that KBR substantially assisted Movants' trafficking and servitude.

There is more evidence than KBR has been able to produce. For example, in one email that Plaintiffs did receive from KBR, a high-ranking KBR official forwarded an inquiry about trafficking allegations from a New York Times reporter and commented that "the press continues to dig up these stories and Houston [KBR's corporate headquarters] insists on answering each one." Ex. 7 (KBRE0006851). Indeed, as a Fifth Circuit opinion summarized in a prior case against KBR involving similar allegations:

> [T]hese specific incidents occurred against the backdrop of media reports and growing international concern regarding potential human trafficking and other labor abuses by U.S. military contractors in Iraq, as well as an aggressive anti-trafficking campaign by the U.S. military and agencies including the Department of Defense, targeted at U.S. military contractors. It defies reason to conclude that all KBR employees in the U.S. were oblivious to these controversies.

*Ramchandra Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 212-13 (5th Cir. 2017) (Graves, J., dissenting) (footnote omitted).[2] Nevertheless, KBR has produced hardly any documents showing its responses and reactions to these inquiries and investigations.

Movants' requests for production seek to fill in the gaps with more concrete evidence that KBR's managers in the United States knew about the widespread trafficking in KBR's LOGCAP III workforce and enabled it through coordinated responses. For example,

---

[2] The lead plaintiff in the prior case, Ramchandra Adhikari, is unrelated to Movant Krishna Prasad Adhikari.

5

- Request 2 seeks documents related to the specific conduct at issue in the Complaint (human trafficking, deceptive recruitment, and other specific abuses alleged in the complaint, as well as any investigations undertaken related to reports of those abuses);

- Requests 3 and 5 seek evidence, to the extent not produced in response to Request No. 2, of knowledge of trafficking and KBR's response by targeting specific investigations and allegations, including the specific investigations cited by a Fifth Circuit opinion as well as reports sent to a Halliburton email address pursuant to company policy;

- Request 6 seeks evidence of knowledge of trafficking and KBR's response by targeting KBR's response to media inquiries, including correspondence with specific journalists and media organizations known to have covered allegations of trafficking in KBR's LOGCAP III workforce;

- Requests 8, 9, and 12 seek evidence of knowledge of trafficking and KBR's response by seeking its responses, both internal and external, to efforts by the U.S. and foreign government attempts to crack down on the widespread trafficking on military bases in Iraq, including through antitrafficking orders and regulations;

- Request 11 seeks evidence of KBR's response to and complicity in trafficking by seeking evidence of its communications, coordination, and responses to the subcontractors who were providing it with trafficked labor;

- Requests 4, 7, 10, and 13 seek the identities of KBR officials who likely possess further knowledge about the subjects covered in the Requests listed above; and

- Requests 14 and 15 seek additional discoverable information by probing the relationship between Halliburton KBR prior to their split, the extent to which Halliburton retained relevant information after the split, and KBR's right to access that information.

Ex. 3, Plaintiffs' Request for Production to Halliburton and HESI, at 12-18.

### C. The Subpoenas

On April 1, 2020, Movants served the subpoenas on Halliburton Company and Halliburton Energy Services, Inc., at 1675 South State Street, Suite B, Dover, Delaware 19901, which is both companies' registered address in their state of incorporation. Ex. 4, Affidavit of Service; Ex. 8, Entity Details, Halliburton Co., Delaware Department of State, Division of Corporations; Ex. 9, Entity Details, Halliburton Energy Services, Inc., Delaware Department of State, Division of Corporations. The subpoenas requested a response to the attached document request be served to 1100 New York Avenue NW, Fifth Floor, Washington, DC, 20005, which is

the office of Movants' counsel and is 95.3 miles by road from Halliburton's registered Delaware address. Ex. 1, Subpoena to Halliburton Co.; Ex. 2, Subpoena to HESI; Ex. 10, Google Maps Directions. Movants gave Halliburton 30 days from the date the subpoena issued to respond (29 days from the date of service), which is more than twice the 14 days required under Rule 45.

Prior to serving Halliburton with the subpoenas, movants also served the subpoenas on KBR. Ex. 11, Email from A. Fryszman to R. Hess, et al. (March 30, 2020). KBR acknowledged the subpoenas and has not objected. Ex. 6, Email from R. Hess to A. Fryszman et al. (April 2, 2020).

As of this filing, Movants' counsel have received no objection, response, or any other communication from Respondents—formal or informal.

## II.   JURISDICTION

This Court's jurisdiction derives from the Southern District of Texas's jurisdiction over the underlying litigation pursuant to 28 U.S.C. §§ 1331, 1350, and 1367(a). When a party seeks to compel a nonparty to comply with a subpoena, the Federal Rules of Civil Procedure grants jurisdiction over the motion to the court in the district where compliance is required. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). Because the subpoenas at issue command compliance in Washington, D.C., this Court has jurisdiction.

## III.   ARGUMENT

Rule 45 allows a subpoena to be issued to a nonparty from the court in which the underlying action is pending. Fed R. Civ. P. 45(a)(2). An attorney authorized to practice in the issuing court may issue the subpoena. Fed. R. Civ. P. 45(a)(3). A subpoena duces tecum may demand production of documents or electronically stored information to any location within 100 miles of where the responding nonparty resides. Fed. R. Civ. P. 45(c).

"Discovery obtained from a nonparty pursuant to Rule 45 has 'the same scope as provided in Rule 26(b).'" *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (quoting Advisory Committee Note to 1946 Amendment to Rule 45(d)). Thus, the responding nonparty must produce all relevant information unless the information sought is privileged or it would be unreasonably burdensome to produce. *See id.* If the issuing party can establish the information sought is relevant, the responding nonparty has the burden "to show that the documents requested are either unduly burdensome or privileged." *Id.* (quoting *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)). Absent unusual circumstances and good cause, the responding nonparty waives any objections to a subpoena by failing to serve them within 14 days. *Id.* at 124

The subpoenas Movants seek to enforce against Respondents were properly issued and seek information relevant to their lawsuit against KBR. Respondents waived whatever objections they might have by failing to object or otherwise respond.

### A. The Subpoenas Seek Specific Information Relevant to the Underlying Litigation

The documents Movants seek from Halliburton are all relevant to Movants' lawsuit against KBR. As discussed above, Movants' requests for production target documents showing KBR's knowledge of the widespread trafficking in its LOGCAP III workforce in Iraq and its coordination and response to allegations and investigations relating to the trafficking. Prior trafficking victims lost litigation involving similar allegations against KBR specifically because they lacked such relevant information. Affirming summary judgment in that case, the Fifth Circuit explained that those plaintiffs "had failed to introduce any evidence indicating that KBR's U.S.-based employees either (1) 'understood the circumstances surrounding Daoud's "recruitment" and "supply" of third-country nationals like Plaintiff' or (2) 'worked to prevent

8

those circumstances from coming to light or Daoud's practices from being discontinued.'" *Ramchandra Adhikari*, 845 F.3d at 198.

Consistent with the Fifth Circuit's standard, Movants thus seek from Halliburton documents showing KBR's knowledge of the abuses in Iraq and its response and coordination aimed at preventing the practices from being discontinued. Thus, Movants' requests for production target documents showing KBR received allegations detailing the circumstances of the trafficking in Iraq. *See, e.g.*, Ex. 3, Request 3 (seeking "allegations, inquiries, information, data, responses, complaints or reports received" by KBR and relating to trafficking and related activity). And it seeks to show KBR responded to that knowledge in ways meant to suppress, downplay, or deflect attention away from these practices, through coordinated responses to the media and the government and by undertaking investigations aimed to absolve its subcontractors. *See, e.g., id.*, Request 5 (seeking "documents concerning any survey, investigation, inquiry, review, compliance review, corrective action, or other procedure you or KBR undertook regarding" trafficking and related activity); *id.*, Request 6, (seeking documents relating to media inquiries about trafficking in Iraq); *id.*, Request 9 (seeking documents relating to government inquiries into trafficking in Iraq).

In fact, the trial court recently ruled the very information Movants seek is material evidence that would preclude summary judgment. After failing to provide Movants with the documents they now seek from Halliburton, KBR moved for summary judgment, arguing Movants' evidence did not satisfy the standard the Fifth Circuit set forth in *Ramchandra Adhikari*. Movants requested a stay of summary judgment under Federal Rule of Civil Procedure 56(d) so they could conduct further discovery to uncover this evidence. The trial court agreed that a stay was warranted, ruling that Movants had "set[] forth a plausible basis for believing that

specified facts are obtainable and necessary" and that "such facts, if adduced, will create a question of material fact impacting both of Defendants' pending motions for summary judgment." *Krishna Prasad Adhikari II*, 2020 WL 588933, at *3. And as an example of why the outstanding discovery is material to summary judgment, the trial court explained that "documents from the Houston-based press office . . . speak[] directly to [the] domestic knowledge requirement." *Id.*

Movants' requests for production are narrowly drawn to target this relevant information. Movants served only 15 requests, which mostly seek specific documents or categories of documents, or documents related only to specific activities. For example, Request 3 targets specific allegations detailed in the Complaint and in a Fifth Circuit opinion as well as allegations sent to Halliburton or KBR through specific corporate channels. Ex. 3, Plaintiffs' Request for Production to Halliburton and HESI at 14. Other requests cover a limited universe of documents, such as those relating to easily identifiable government and press inquiries. *E.g., id.* at 15-16. The focus of these requests thus ensures production from Halliburton would only include documents that are not only relevant, but centrally important to Movants' allegations against KBR.

### B. The Subpoenas Were Properly Issued and Served

The subpoenas were issued out of the Southern District of Texas, where the underlying litigation is pending. They were issued by Movants' undersigned counsel, who is admitted pro hac vice in the Southern District of Texas. *See* Fed. R. Civ. P. 45(a)(3) Advisory Committee Note to 1991 Amendment ("Any attorney permitted to represent a client in a federal court, even one admitted pro haec [sic] vice, has the same authority as a clerk to issue a subpoena . . . ."). The subpoenas were served by licensed process server Robert DeLacy III on Nicole Vasquez, an

agent for Capitol Services, Inc., which is Respondents' registered agent in Delaware, Respondents' state of incorporation. Ex. 4, Affidavit of Service. The subpoenas demand compliance at 1100 New York Ave. NW, Washington, DC, which is 95.3 miles by road[3] from 1675 South State St., Dover, DE, Respondents' place of incorporation.

### C. Halliburton Waived Any Objections to the Subpoenas

Halliburton failed to serve written objections within 14 days of when the subpoenas were issued, and it failed to respond or move to quash the subpoenas before the response date. Accordingly, whatever objections Halliburton might have had are waived absent a showing of good cause and extraordinary circumstances. *See Denture Cream*, 292 F.R.D. at 124; *see also, e.g., Schoonmaker v. City of Eureka*, No. 17-cv-6749, 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018) ("Failure to serve timely objections [to a subpoena] waives **all** grounds for objection." (quoting *Poturich v. Allstate Ins. Co.*, No. 15-cv-81, 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015)); *La. Generating, L.L.C. v. Ill. Union Ins. Co.*, No. 10-cv-516, 2011 WL 6259052, at *2 (M.D. La. Dec. 14, 2011) ("Courts within the Fifth Circuit have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege."); *Ravenswood Inv. Co. v. Avalon Corr. Servs., Inc.*, 09-cv-70, 2010 WL 11443364, at *2 (W.D. Okla. May 18, 2010) ("Because Defendant did not state its claim of privilege within fourteen days of service of the subpoena on Cole & Reed, the Court concludes Defendant has waived any such claim.").

---

[3] Rule 45(b)(2) requires the place of compliance to be within 100 miles of the Respondents residence as measured by a straight line. *E.g., United States v. Case*, 5:06-cv-570, 2019 WL 3068651, at *1 (N.D.N.Y. July 18, 2019). As the distance here is fewer than 100 miles by road, it is necessarily fewer than 100 miles as measured by a straight line.

There is no indication here of any good cause or extraordinary circumstances that would justify Halliburton's complete failure to even informally respond by the April 29 deadline. Halliburton is a large, well-resourced corporation. Movants gave Halliburton 30 days from the subpoenas' issue date (29 days from the service date) to respond, which is equal to the response time Rule 34 dictates for requests for production. Moreover, Halliburton had advanced warning that they could be subject to these subpoenas because KBR previously requested documents to produce to Plaintiffs and Halliburton did not comply.

Movants recognize that the COVID-19 pandemic potentially impacts the speed with which Halliburton could fulfill Movants' request for production. But the pandemic provides no excuse for Halliburton's failure to even informally communicate with Movants' counsel, whose phone number, email, and address are listed on the subpoenas. Counsel would have readily granted Halliburton an extension to reply if Halliburton had requested one. Businesses and litigants with far fewer resources than Halliburton have managed to conduct basic tasks during the pandemic, even if not "business as usual." Halliburton's in-house counsel surely could have taken five minutes to email Movants' counsel to request an extension if warranted. Far from good cause and extraordinary circumstances, Halliburton's behavior evinces bad faith and an utter disregard for the authority of the federal courts.

### IV.  CONCLUSION

For these reasons, Movants request the Court grant their motion to enforce their subpoenas and compel Respondents to produce the requested documents.

Dated: May 5, 2020                                                      Respectfully Submitted,

/s/ Agnieszka M. Fryszman
Agnieszka M. Fryszman

Attorney in charge (# 459208)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afryszman@cohenmilstein.com

Paul L. Hoffman
John Washington
**SCHONBRUN SEPLOW HARRIS & HOFFMAN L.L.P.**
1543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: (310) 396-0731
Fax: (310) 396-7040
hoffpaul@aol.com
jwashington@sshhlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020, I electronically filed the Motion to Enforce Subpoena and Compel Production, and Incorporated Memorandum of Law with the Clerk of the Court using the ECF and instructed Capitol Process Services, Inc. to serve the Motion to Enforce Subpoena and Compel Production on the following:

| | |
|---|---|
| Halliburton Company<br>Capitol Services, Inc.,<br>1675 S. State St. Ste. B,<br>Dover, DE 19901 | Halliburton Energy Services, Inc.<br>Capitol Services, Inc.,<br>1675 S. State St. Ste. B,<br>Dover, DE 19901 |

Dated:   May 5, 2020                                /s/ Agnieszka M. Fryszman
                                                                Agnieszka M. Fryszman